PATRICK E. PREMO (CSB No. 184915)
ppremo@fenwick.com
SHEEVA J. GHASSEMI-VANNI (CSB No. 246639)
sghassemi@fenwick.com
JOHN-PAUL S. DEOL (CSB No. 284893)
jpdeol@fenwick.com
TIARA R. QUINTANA (CSB No. 315783)
tquintana@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:   650.988.8500
Facsimile:   650.938.5200

Attorneys for Plaintiff
GLINT INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLINT INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PERCEPTYX, INC., a California corporation; MITCHELL ANDERSON, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 3:18-CV-02886-CRB<br><br>**DECLARATION OF MARC MALOY IN SUPPORT OF PLAINTIFF GLINT INC.'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY** |

I, Marc T. Maloy, declare as follows:

1. I have been employed at Glint Inc. ("Glint" or the "Company") since November 6, 2017. I am Glint's Chief Revenue Officer. My job duties at Glint include, but are not limited to, all sales operations at Glint globally, including managing the Company's entire sales team.

2. I make this declaration of my own personal knowledge, except to any extent otherwise specified. If called as a witness, I could and would testify competently to the facts set forth herein.

3. I have worked in high tech sales since approximately 2001. Given my sales background and experience, I am familiar with sales and marketing practices across a variety of industries.

4. Defendant Mitchell Anderson ("Mr. Anderson") was a member of my sales team at Glint until approximately May 1, 2018.

5. During the last week of Mr. Anderson's employment on or about April 25, 2018, I called Mr. Anderson and reminded him that he was still bound by his written Employee Invention Assignment and Confidentiality Agreement that he signed when he started at Glint. During that conversation, I also advised him not to take any confidential or proprietary data of Glint with him when he departed. In response, Mr. Anderson assured and promised me that he had not and would not do so.

6. During the first week of May 2018, I was informed by my colleague, Technical Operations Manager Anita Carey, that she had uncovered evidence suggesting that Mr. Anderson had taken Glint data with him to his new employer, Perceptyx, Inc. ("Perceptyx").

7. Mr. Anderson was only permitted to continue working at Glint after his notice of termination to (a) allow him the opportunity to earn commissions on two sales that seemed close to being closed, and (b) to otherwise assist with a smooth transition of certain customer accounts. There is no legitimate reason for him to have accessed, reviewed and downloaded these files, particularly when most of the information taken was for customers or prospects with which he was not involved or was no longer involved.

8. On May 10, 2018, I called Mr. Anderson and told him that the Company had discovered that he had accessed from the Company's Google storage and downloaded Glint data without permission. I wanted to ensure that Anderson had not shared any of Glint's information with his new employer. In response, Mr. Anderson promised me that he had not downloaded any information outside the normal scope of his work and that he had not shared any Glint data with Perceptyx. During that call, Mr. Anderson swore "to God" and "on his life" that he did not retain any Glint information or provide it to Perceptyx.

9. On May 12, 2018, Mr. Anderson called and texted me, telling me that he was "freaking out." During my discussions with him on May 12, 2018, Mr. Anderson again swore to me that he had not retained any Glint data and that he had not and would not share any such data with Perceptyx. Mr. Anderson also advised me that he was not soliciting any of Glint's prospective customers and that he had a different territory.

10. Based on his May 14, 2018 response to the May 11, 2018 letter from Glint's outside counsel, I now understand that Mr. Anderson lied to me, as that response makes clear that he did indeed retain Glint data after I spoke with him on May 10 and May 12, 2018. Furthermore, I understand, based on e-mails sent to Mr. Anderson's Glint e-mail address on May 14, 2018, that he is currently using Glint data to pursue customers Glint had been pursuing before Mr. Anderson's departure.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 17th day of May, 2018 in Park City, Utah.

_____
Marc T. Maloy